# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

PHYLLIS E. GREGG, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-08-223-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

Plaintiff Phyllis E. Gregg (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on March 16, 1950 and was 57 years old at the time of the ALJ's decision. She completed her high school education. Claimant has engaged in past relevant work as a solderer, an electronics assembler, and a courier. Claimant alleges an inability to work beginning August 5, 2004 due to

fibromyalgia, irritable bowel syndrome, insomnia, fatigue, memory problems, and concentration problems. Claimant also contends she suffers from polymyalgia, headaches, temporomandibular joint syndrome, osteoarthritis, carpal tunnel syndrome, tingling, numbness and pain in her hands, hip problems and pain related to bursitis, tingling and numbness in her left foot, plantar fasciitis, muscle spasms, depression, and difficulties with the side effects of medications.

**Procedural History**

On March 3, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On November 7, 2007, Claimant appeared at a hearing before ALJ Michael A. Kirkpatrick in McAlester, Oklahoma. By decision dated February 15, 2008, the ALJ found Claimant was not disabled at any time through the date of the decision. On May 15, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential

evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform her past work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in rejecting the opinions of Claimant's treating physician.

**Consideration of Treating Physician's Opinions**

Claimant specifically contends the ALJ rejected the opinion of Dr. Christopher Mitchell, one of her treating physicians. Claimant first saw Dr. Mitchell on May 5, 2006 for treatment of muscle and joint pain and muscle cramps. Claimant also reported tingling and numbness in her fingers and toes. Dr. Mitchell concluded Claimant had fibromyalgia, osteoarthritis, TMJ syndrome, carpal tunnel syndrome, and chronic pain. He treated Claimant with medication. (Tr. 296-98).

Dr. Mitchell again attended Claimant on June 1, 2006 complaining of continued hip pain. Claimant did, however, report improvement in the facial pain she had been experiencing after she had obtained dental braces. Dr. Mitchell diagnosed Claimant with chronic pain, osteoarthritis, and fibromyalgia and continued medication. (Tr. 291-92).

On July 18, 2006, Claimant reported sleepiness, headaches, and bilateral hip pain with activity. Dr. Mitchell diagnosed Claimant

5

with headaches and narcolepsy and prescribed medication. (Tr. 287-90).

On August 2, 2006, Claimant again saw Dr. Mitchell with hip pain. Dr. Mitchell diagnosed her with narcolepsy, chronic pain, osteoarthritis, and fibromyalgia (Tr. 283-84).

On October 2, 2006, Claimant reported to Dr. Mitchell that she continued to suffer from aching all over at least two to three days per week. She also complained of muscle weakness. Dr. Mitchell found her to be tired and prescribed medication. (Tr. 281-82).

On October 31, 2006, Claimant went to Dr. Mitchell with musculoskeletal pain and sleep problems. She had tenderness to palpation over her neck and hip muscles. Claimant's C-reactive protein level was elevated. Dr. Mitchell prescribed medication. (Tr. 275-76).

On December 12, 2006, Claimant reported to Dr. Mitchell that her joints and muscles were no longer so painful that they felt they would explode. Her sleep problems had also improved. Dr. Mitchell diagnosed Claimant with insomnia, narcolepsy, chronic pain, and osteoarthritis. (Tr. 273-74).

On January 11, 2007, Claimant visited Dr. Mitchell once again. She reported her pain was not as bad but she continued with body aches all over and feeling tired. Dr. Mitchell diagnosed her with

6

polymyalgia rheumatica, vasculitis, and psoriasis. (Tr. 270-71). Claimant's C-reactive protein levels remained elevated. (Tr. 269).

On February 9, 2006, Claimant told Dr. Mitchell that she continued to suffer muscle pain despite receiving Prednisone from another doctor. She also reported she had droopy eyelids and difficulty keeping her eyes open. Dr. Mitchell continued medication. (Tr. 267-68).

On May 14, 2007, Claimant reported increased fatigue, poor sleep, body aches, and right hip pain to Dr. Mitchell. She continued having uncontrollable episodes of sleep. Lortab no longer controlled her hip pain. Dr. Mitchell increased Claimant's pain medication. (Tr. 265-66).

In a June 20, 2007 visit to Dr. Mitchell, Claimant stated her pain medications were no longer effective and she had increased medication to help her sleep. She suffered shortness of breath and side effects from some medications. Dr. Mitchell increased Claimant's pain medication and provided her with a steroid injection. (Tr. 263-64).

On August 10, 2007, Claimant described her pain to Dr. Mitchell as 4 out of 10 with no ambulation but increased to 7 out of 10 with ambulation. Dr. Mitchell diagnosed Claimant with fibromyalgia, polymyalgia rheumatica, insomnia and GERD. He

7

treated Claimant with low doses of steroids. (Tr. 261-62).

On September 10, 2007, Dr. Mitchell re-evaluated Claimant's condition. She told him she continued to suffer pain with ambulation of more than 5 minutes in duration. She experienced sleep problems and was tired all day. Dr. Mitchell diagnosed Claimant with hypertension, insomnia, polymyalgia rheumatica, and fibromyalgia. (Tr. 259-60).

On January 10, 2008, Claimant sought treatment from Dr. Mitchell for back pain, neck pain, and headaches due to polymyalgia rheumatica. She had an elevated C-reactive protein. She reported difficulty completing her normal daily activities at home. She was tired all day with some abdominal bloating and cramps. Dr. Mitchell gave Claimant a B12 injection and started low doses of steroids. (Tr. 459-60).

In February, 2008 visits to Dr. Mitchell, Claimant continued suffering from pain. She was treated with steroids and various medications.

On October 31, 2006, Dr. Mitchell completed a Treating Physician's Medical Source Statement - Physical on Claimant. He repeated his diagnoses of polymyalgia rheumatica, narcolepsy (insomnia), plantar fasciitis, carpel tunnel syndrome, and irritable bowel syndrome. He related that Claimant had

8

demonstrated multiple tender trigger points; nonrestorative sleep; irritable bowel syndrome; frequent, severe headaches; frequent low grade fever; depression; morning stiffness; lumbar spinal pain; reduced range of motion lumbar spine; impairment of short term memory or concentration; numbness and tingling; anxiety; chronic fatigue; muscle weakness; radicular pain; and muscle spasms. Dr. Mitchell also indicated Claimant experienced chronic pain requiring medication, which would affect Claimant's ability to concentrate. He answered affirmatively on the form that Claimant suffered from depression requiring medication. Her condition also required her to alternate between sitting, standing, and reclining as needed during an 8 hour workday. She would be required to take breaks in an 8 hour workday. (Tr. 254).

Dr. Mitchell also restricted Claimant on the form to frequently lifting and/or carrying less than 10 pounds, occasionally lifting and/or carrying less than 10 pounds, standing and/or walking a total of 2 hours in an 8 hour day and continuously for 1 hour or less at a time, and sitting for a total of 4 hours in an 8 hour workday and continuously for less than 1 hour at a time. Dr. Mitchell also indicated Claimant would have to change positions every 20 minutes. (Tr. 255).

Dr. Mitchell restricted Claimant to never climbing, balancing,

9

kneeling, or crouching. He also stated Claimant could occasionally stoop and bend. He also imposed environmental restrictions of no extreme heat or cold or humidity. Id.

On October 17, 2007, Dr. Mitchell wrote a "to whom it may concern" letter concerning Claimant's condition. He states Claimant suffered from "severe pain in her muscles and joints for years." He relates the diagnosis of unspecified rheumatologists of "a severe form of fibromyalgia." He also states that he "super-imposed" a further condition of polymyalgia rheumatica disease due to a high C-reactive protein and proximal muscle weakness and headaches. Her pain caused sleep problems and depression. Dr. Mitchell concludes that Claimant "has been unable to work for 2.5 yrs due to worsening of her chronic pain and I feel she should be placed on permanent disability due to the chronic nature and poor prognosis of her disease." (Tr. 257-58).

In his decision, the ALJ recognized by the Medical Assessment form and the letter authored by Dr. Mitchell. (Tr. 19-20). However, in the end, the ALJ rejected the medical conclusions in both. First, the ALJ stated Dr. Mitchell's conclusions concerning Claimant's ability to work touched on issues reserved to the Commissioner. The ALJ then gave Dr. Mitchell's opinions less than controlling weight. (Tr. 24).

10

Other reasons the ALJ gave for reducing the weight of Dr. Mitchell's opinions were Dr. Mitchell was not a specialist, Dr. Mitchell would not have had knowledge of Claimant's condition prior to his treatment beginning 1.5 not 2.5 years prior to the letter, he did not refer Claimant to a pain management clinic, Dr. Mitchell's treatment notes do not support his conclusions, and no indication Claimant was on hydrocodone or oxycodone as Dr. Mitchell suggests in his letter. The ALJ characterized Dr. Mitchell's treatment of Claimant's conditions as "quite conservative, consisting primarily of the routine prescribing of medication." (Tr. 24).

The last suggestion of the ALJ smacks of offering a medical opinion contradictory to that of a medical professional when the ALJ is not qualified to render. <u>Miller v. Chater</u>, 99 F.3d 972, 977 (10th Cir. 1996). No medical professional either attending Claimant or reviewing her medical records have indicated a more aggressive form of treatment. Indeed, the ALJ does not suggest in his unqualified medical opinion what he would consider to be aggressive treatment. All of these physicians have treated Claimant with varying forms of medication, as Dr. Mitchell did.

Notwithstanding the ALJ's suggestion to the contrary, Claimant was treated by a rheumatologist, Dr. Dixit in 2004 and 2005 and Dr.

11

Roche in 2005 and 2006 (Tr. 161-64, 223-27, 296-97, 313). Additionally, Claimant was treated by Dr. Mondell for pain management. On January 13, 2004, Claimant was evaluated for fibromyalgia by Dr. Dean L. Mondell. He noted muscle tenderness and decreased strength, including decreased grip strength, bilaterally. (Tr. 193-94). Claimant's treatment continued with Dr. Mondell through June of 2004. (Tr. 191-92, 195-98).

Additionally, contrary to the ALJ's findings, Dr. Mitchell's treatment notes are consistent with the treatment notes of the specialists. They are supportive of his ultimate findings concerning Claimant's condition.

Moreover, beyond providing inaccurate and unsupported reasons for rejecting Dr. Mitchell's opinions, the ALJ appears to have not afforded Dr. Mitchell's opinions any weight.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." <u>Id.</u> (quotation omitted). "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

13

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

On remand, the ALJ shall re-evaluate Dr. Mitchell's opinions and make the necessary findings in light of the support in the medical record for his conclusions. He shall also specifically state the level of weight he affords to Dr. Mitchell's opinions and the basis for doing so.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 30th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE